719 P.2d 1216

**Wanda HARDCASTLE, Plaintiff-Respondent,**

v.

**BOARD OF COMMISSIONERS of JEFFERSON COUNTY, Idaho, Defendant-Appellant.**

No. 15916.

Court of Appeals of Idaho.

May 30, 1986.

Robin Dunn, Pros. Atty., Jefferson County, Rigby, for defendant-appellant.

Fred G. Zundel, Idaho Falls, and Frederick F. Belzer, Pocatello, Idaho Legal Aid Services, Inc., for plaintiff-respondent.

HUNTLEY, Judge, Pro Tem.

Wanda Hardcastle, then a resident of Jefferson County, was institutionalized first at the Idaho State School and Colony in Nampa, Idaho on June 23, 1932 and ultimately in a nursing home in Ada County in 1980. In 1980 Hardcastle applied to Jefferson County for medical benefits. Jefferson County denied her application for indigent benefits to pay for medications not reimbursed by Idaho State Medicaid. Good Samaritan Nursing Home of Boise, Idaho, filed a second application on behalf of Hardcastle, dated May 25, 1983, for medication dating back to September 8, 1980. Jefferson County also denied this application. The May 25, 1983 application stated Hardcastle's total resources included $170 per month in Social Security benefits and $90 in cash.

The Jefferson County Commissioners granted Hardcastle's request for an indigency hearing. Hardcastle appeared through her attorney. No witnesses were called at that hearing, in support of her indigency claim. The county again denied the claim submitted by Good Samaritan on behalf of Hardcastle.

Hardcastle petitioned for judicial review in district court. The court held for Hardcastle and remanded the case to the county for determination of the amount of the entitlement. The court limited the county's obligation to amounts due on and after July 1, 1983. The parties stipulated that if the county were obligated, as the district court held it was, then the amount owed to Hardcastle for the period July 1, 1983, to March 29, 1985, was $2,629.14.

On appeal to this Court, Jefferson County argues it timely rejected Hardcastle's initial application and that Good Samaritan then failed to submit a timely application on behalf of Hardcastle. Jefferson County further asserts Hardcastle failed to carry her burden of proof at the indigency hearing and that in any event the county cannot be obligated for medication bills beyond the Medicaid reimbursement of $30.00 per month. The district court held the county failed to make a written denial within sixty days of receipt of Good Samaritan's application as required by I.C. § 31–3505. *St. Luke's Regional Medical Center, Ltd. v. Gem County,* 107 Idaho 998, 999, 695 P.2d 383, 384 (1985). This statutory time requirement is strictly enforced. *Ottesen v. Board of Commissioners of Madison County,* 107 Idaho 1099, 1101, 695 P.2d 1238, 1240 (1985).

## I.

I.C. § 31–3505 reads:

If the board of county commissioners fails to act upon an application within sixty (60) days from the receipt of said application, it shall notify the applicant in writing, or upon its failure to give notice within said time, the application shall be deemed approved, and the applicant entitled to payment as if said application had been approved.

If the application is denied, the applicant may request a hearing before the board of county commissioners. The applicant shall be entitled to judicial review of the decision of the board, in substantially the manner provided in the administrative procedures act, chapter 52, title 67, Idaho Code.

Accordingly, the district court deemed Good Samaritan's application on behalf of Hardcastle approved, as required by the above statute.

The application was dated May 25, 1983. The county admits it received the application in late May or early June 1983. The county offered the affidavit of Glenn Scott, the welfare director for Jefferson County, wherein Scott states he caused a denial letter to be sent to Good Samaritan on July 18, 1983. This would have been within the statutory time period for denial. The county kept no copy of the alleged letter, but attached to Scott's affidavit a copy of Scott's notes allegedly made in preparation for writing the letter. The notes indicated the county intended to request proof from Hardcastle of Jefferson County residency, the date her application was mailed, and the cost of medication for which she sought reimbursement. The notes do not evidence a denial of application, but merely a request for additional proof. The county board of commissioners eventually sent a denial letter ten months after Hardcastle's application. The letter indicates the denial decision was made on March 26, 1984, long after the sixty-day time limit had expired. The letter makes no reference to any prior denial.

Good Samaritan asserts it never received the letter Scott alleges he sent. In support of this assertion Good Samaritan introduced in district court a letter from itself to the county dated March 9, 1984 which states that Good Samaritan had received no response whatsoever to its application.

In reviewing the district court's granting of summary judgment for Hardcastle, we must view the evidence and inferences in the light most favorable to the county. We therefore assume the county prepared a letter based on Scott's' notes and sent it to Hardcastle. However, Scott's notes (which the county introduced below) clearly show such a letter would have been merely a request for additional information and not a denial of Hardcastle's application. The district court correctly determined that the county failed to timely deny Hardcastle's application, resulting in its deemed approval under I.C. § 31–3505. That deemed approval is effective even if Hardcastle never proved her county of residence. *St. Luke's Regional Medical Center,* 107 Idaho at 999, 695 P.2d at 384. The county's claim that Hardcastle's application was not timely submitted is similarly barred by operation of I.C.

§ 31–3505. *Ottesen*, 107 Idaho at 1101, 695 P.2d at 1240.

The county argues Hardcastle's failure to introduce evidence at the commission hearing necessarily requires the conclusion that Hardcastle failed to meet her burden of proving residency, indigency, the necessity of medical treatment, and the reasonable and necessary hospital charges. However, I.C. § 31–3505 provides that upon the county's failure to give timely notice of denial "the application shall be deemed approved, and the applicant *entitled to payment as if said application had been approved.*" (Emphasis added.) We believe this language clearly evinces the legislature's intent that when an application is not timely denied, its factual averments generally will be deemed true and the applicant will be entitled to such payments as the medical indigency statutes provide in relation to the facts averred. The applicant has no obligation to reestablish the factual prerequisites to payment at a subsequent administrative hearing occasioned by the county's tardy denial of the application. The statute implies this conclusion. *"If the application is denied,* the applicant may request a *hearing* before the board of county commissioners." I.C. § 31–3505 (emphasis added). This language necessarily refers to a *timely* denial; otherwise, the sixty-day deadline would be meaningless.

Under I.C. § 31–3505, to the extent allowed under the medical indigency statutes, Hardcastle is entitled to reimbursement of medication expenses accruing after the county's receipt of her application. The medical indigency statutes contemplate county reimbursement for only those non-emergency medical services provided after approval of the application. This is the negative inference of I.C. § 31–3407:

> [a] claim against the county shall be allowed for services rendered prior to approval of the application heretofore mentioned where a hospital renders the services to a medically indigent person in an emergency and subsequently there is obtained said approval. . . .

Although this provision deals with hospital services there is no reason to treat reimbursement of the costs of medication received by nursing home patients differently. *See also* I.C. § 31–3404.

Where a medical indigency application is deemed approved pursuant to I.C. § 31–3505 the county should be held liable for payment from the date the application was received by the county. The alternative would be to deem the application approved upon the expiration of the sixty-day time period following application. However, such a rule would reward the county for its inaction, while reducing the amount reimbursable to the applicant. Such a result would be inconsistent with I.C. § 31–3505's automatic approval of applications neither approved nor denied due to the county's inaction.

II.

Having decided the deemed approval of Hardcastle's application entitles her to county reimbursement in the amount authorized by statute, we now consider the amount so authorized. The district court ruled:

> Jefferson County is obligated to pay for *all medications* that are required by Wanda Hardcastle that are not paid by the Idaho Department of Health and Welfare for July, 1983 and subsequent months. [Emphasis added.]

The county urges that the foregoing ruling errs in three respects. First, the district court lacked jurisdiction to order the county to reimburse Hardcastle for medication expenses incurred after the date of the district court's order. We believe this contention has been mooted. The parties have agreed that on September 1, 1985, the Medicaid program administered by the Idaho Department of Health and Welfare became obligated to pay the full amount of medication expenses incurred by institutionalized patients such as Hardcastle. Idaho Department of Health and Welfare Manual, Title 3, Ch. 9, "Rules Governing Medical Assistance," § 3–9126 (as amended September 1, 1985). For the purpose of

this case we will accept the parties' reading of the regulation.

 The county's second contention is that I.C. § 31–3508 relieves the county of responsibility for any bills under $25.00.[1] Assuming (without deciding) that the statute applies to nursing home cases as well as to hospitalization, we nevertheless think that its underlying purpose is to prevent the processing of bills where the administrative expense is excessive in relation to the amount of assistance sought. We interpret the section as permitting indigent persons or their health care providers to accumulate bills and to submit them when the aggregate sum exceeds $25.00.

 Finally, the county argues that I.C. § 31–3508 requires payment only in the amount of established "reimbursement rates." The county contends that the applicable rate in this case is that which the Medicaid program would pay. For the period from July 1, 1983, to August 31, 1985, the monthly rate, according to a stipulation of the parties, would be $30.00, leaving a substantial excess for which Hardcastle seeks to have the county held liable.[2] However, whether I.C. § 31–3508 places a reimbursement-rate ceiling on the county's obligation to reimburse nursing home expenses and, if so, what precise rates apply to this case, are questions not adequately briefed or developed in the record to be decided in this appeal. We leave this question for development and initial decision on remand.

The order of the district court remanding the case to the board of county commissioners of Jefferson County, is affirmed as modified in this opinion. No attorney fees awarded. Costs to respondent.

WALTERS, C.J., and BURNETT, J., concur.

---

1. Idaho Code § 31–3508 provides as follows:
   **31–3508. Amount of aid for hospitalization.**—The county responsible for payment of hospitalization of a medically indigent person shall pay an amount not to exceed the reimbursement rates to the hospital rendering such services. The bill submitted for payment pursuant to section 31–3405, Idaho Code, shall show the total hospital charges less any amounts which have been received under any other federal or state law. Bills of less than twenty-five dollars ($25.00) shall not be presented for payment.

2. The parties have further stipulated that Hardcastle's unreimbursed medication expenses for the period July 1, 1983 to March 29, 1985, total $2,629.14, that sum being the amount of such expenses in excess of $30.00 per month. Since the stipulation deals with amounts owed only up to March 29, 1985, the district court properly ordered remand to the Board of County Commissioners for determination of amounts owing from March 29, 1985 through August 31, 1985.