842 P.2d 689

**UNIVERSITY OF UTAH HOSPITAL and MEDICAL CENTER, a Utah corporation, Petitioner–Appellant–Respondent on Appeal,**

**v.**

**TWIN FALLS COUNTY, a political subdivision of Idaho, Board of Commissioners of Twin Falls County; Marvin Hempleman, Board Chairman; James F. Fraley, Board Member; Norma Blass, Board Member; Richard A. Pence, Board Clerk; Juanita Bryan, Welfare Director, Twin Falls County, Respondents–Appellants on Appeal.**

No. 18735.

Supreme Court of Idaho, Boise, April 1992 Term.

Nov. 30, 1992.

Steven D. Peterson, Twin Falls, for respondents-appellants on appeal.

Penland & Munther, Chtd., Boise, for petitioner-appellant-respondent on appeal. Larry L. Goins argued.

BISTLINE, Justice.

We must determine whether the district court properly allowed an appeal from the continuance of an administrative hearing, absent issuance of findings of fact and conclusions of law by the Board of Commissioners of Twin Falls County ("the Board"). If the appeal was proper, then we must also determine whether the *possibility* of prospective benefits from other governmental agencies constitutes "available resources," thus relieving a county of the obligation to pay an indigency claim in part or in full. The University of Utah Hospital and Medical Center ("the Hospital") also claims entitlement to prejudgment interest on the indigency claim, plus costs and attorney fees for the appeal to the district court. Additionally, each party requests costs and attorney fees on the appeal to this Court.

Hyrum Morrison was injured in a motorcycle accident in Elko, Nevada, and was flown to the University of Utah Hospital where he received treatment and rehabilitation services from July 14 through July 29, 1988. He incurred medical charges in excess of $20,000 during his stay. Morrison applied for various types of government assistance to cover such charges, including federal supplemental social security income ("SSI") and state medicaid ("medicaid")

benefits.[1] All of the claims were initially denied, and Morrison administratively appealed each denial. As of the date that this appeal was filed, there apparently had been no final decision on any of the aforesaid benefits which he sought. Because Morrison had no medical insurance, the Hospital applied to Twin Falls County for medical indigency assistance pursuant to I.C. § 31–3504.

On September 27, 1988, the County denied the Hospital's application in part due to the possibility that the SSI and medicaid benefits may become available in the future. The Hospital then requested an appeal hearing before the Board as a vehicle for presenting evidence of Morrison's medical indigency. After the hearing, the Board notified the Hospital via letter that the case would "be held in continuance until a decision has been made by SSI." R. at 20.

Thirty days later, the Hospital filed a notice of appeal in the district court. The Hospital also filed a petition for declaratory relief from the Board's decision to continue the case. The petition was summarily dismissed. By order of the district court on May 3, 1989, the appeal was stayed for 120 days to allow a pre-litigation panel[2] to review the Board's findings, specifically to determine whether pending claims for SSI and medicaid benefits were "available resources" in determining medical indigency. The panel's answer was "that if Workmen's Compensation and SSI are not available, Mr. Morrison should be considered medically indigent. If available, however, they are a prior resource." R. at 149. The panel's determination was filed in the district court on August 16, 1989; the May 3rd stay of appeal was lifted, and the Hospital proceeded to appeal the Board's "continuance," otherwise put, the Board's decision to stay the case indefinitely, to the district court.

Judge Hurlbutt of the district court ruled that (1) the Hospital properly appealed this case because the Board's letter regarding a "stay" of proceedings constituted a denial of the Hospital's application, (2) pending SSI and medicaid applications are not "available resources" under I.C. § 31–3502(1) to be considered by the County in determining medical indigency, (3) the Hospital was entitled to prejudgment interest, and (4) no costs or attorney fees were to be awarded for the Hospital's appeal to the district court.

The County filed an unsuccessful petition for rehearing with the district court. On May 25, 1989, an appeal was taken to this Court from the district court's initial decision on appeal. On September 27, 1990, this Court granted the joint motion of the County and the Hospital to suspend the appeal until April 1, 1991, pending implementation and funding of House Bill No. 582, the purpose of which was to transfer fiscal responsibility for medical indigency care from the counties to the state of Idaho. Prior to April 1, 1991, the Idaho Legislature voted against funding the bill, thus leaving medical indigency responsibility with the counties. Accordingly, this appeal was reactivated.

## I.

### THE APPEAL TO THE DISTRICT COURT WAS PROPERLY TAKEN

Idaho Code § 31–3505 provides that the Board's decision on a medical indigency application shall be subject to judicial review "in substantially the manner provided in the administrative procedures act, chapter 52, title 67, Idaho Code," which is as follows:

A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case of an agency ... is entitled to judicial review under this act.... *A preliminary, procedural, or intermediate agency action or ruling is immediately reviewable if re-*

---

1. Upon a finding of a party's eligibility for federal SSI benefits, qualification for state medicaid benefits is automatic. I.C. § 56–209b(1).

2. The pre-litigation panel was selected pursuant to the provisions of I.C. § 31–A3502.

view of the final agency decision would not provide an adequate remedy.

I.C. § 67–5215(a) (emphasis added). Also, Idaho Code § 67–5215(g) authorizes us to reverse or modify administrative "findings, inferences, conclusions or decisions" that are "in violation of ... statutory provisions," "made upon unlawful procedure," or "affected by other error of law." The County contends that the Hospital's appeal was improperly taken to the district court, based upon its contention that the Board did not make formal findings of fact or conclusions of law, and hence no "final decision" existed which was subject to judicial review.

■■■■ We find, as did the district court, that by its letter of January 27, 1989, the County improperly continued Morrison's case for an indefinite period of time. Thus in our view, the present situation is a "preliminary, procedural, or intermediate agency action" and it becomes immediately reviewable. *See* I.C. § 67–5215(a). The Board's decision to continue the case was the functional equivalent of a stay order of undetermined duration, and while not an express denial of the Hospital's application, leaves the Hospital unremunerated for its substantial expenditures in providing medical care to Hyrum Morrison, for an indefinite and potentially lengthy time period.

The only limit the County placed on the duration of its continuance order was until "a decision has been made by SSI." The County presumably was referring to a final appellate decision because at the time the letter was written, Morrison's initial application for SSI benefits had already been denied. The United States Supreme Court has held that a "stay is immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits...." *Landis v. North American Co.*, 299 U.S. 248, 257, 57 S.Ct. 163, 167, 81 L.Ed. 153 (1936). As the Hospital points out, "the indefinite stay order entered by the County could conceivably continue through decision by a federal administrative law judge, a federal district court, the 9th Circuit Court of Appeals and the United States Supreme Court."

The County's continuance of the case pending receipt of a decision potentially years down the road was patently unreasonable. Such indefinite, potentially infinite delay in the application process was not included in nor intended by the medical indigency statutes. In fact, the attendant procedures were designed to result in fairly expeditious conclusions. As will be discussed more fully, health care providers should not be required to wait interminably for a county board's decision. Twin Falls County's procedural maneuver, while it may have been thought to serve the County's purposes and policies, has ineptly served to prolong the decision-making process, and to put off to another day somewhere in the future the County's statutory obligations relative to reimbursement of the valid claims of medical indigents.

This Court's review of the Board's "final" decision, whenever that might be rendered, would not adequately protect nor advance the Hospital's interest in receiving a prompt decision regarding payment. Because of these unusual circumstances, we deem it both proper and expedient to reach a conclusion that will retain and restrain medical indigency litigation within the confines of the legislature's statutes and within the scope, purpose, and policy thereof.

Because no factual determinations remain to be made by the Board, we are positioned to review the legal issues which are needful of resolution, even in the absence of formal findings by the Commission. *See University of Utah Hosp. v. Minidoka County*, 114 Idaho 662, 760 P.2d 1 (1988). The County asserts that Morrison's status as a Twin Falls County resident has yet to be established, based on the County's initial denial of the application on August 26, 1988. However that may be, the County's letter of January 27, 1989, informing the Hospital that the case "will be held in continuance until a decision has been made by SSI" was an implicit affirmation of Morrison's residence in Twin Falls County. R.Vol. 2 at 83. The issue of indigency is, of course, *secondary* to the threshold issue of the alleged medically indigent's legal residence; the SSI decision

would be superfluous information and, hence, the County's delay of the case entirely unjustifiable unless the County accepted as an established fact that Morrison was a resident of Twin Falls County.

If the County had concluded that Morrison was in fact not a resident of Twin Falls County, the proper action would have been to deny the application on that ground, thus avoiding the "pending applications" issue, all of which would have served the laudable purpose of conserving the finite resources of the state's administrative and judicial systems. As an alternative, if the evidence before the County at that time was believed to be insufficient for making an informed ruling relative to the residence of the indigent Morrison, the County should have gathered all available evidence before informing the Hospital of the County's intention to put the controversy "on hold," for reasons other than non-residency. No reason surfaces why the County could not have used its available personnel to muster all available evidence on the question of indigency and reach a conclusion whether or not to recognize the Morrison claim of indigency.

Even were we to find that the County did not implicitly accept Morrison's Twin Falls residence by virtue of its letter to the Hospital, failure to immediately raise that issue in its motion to the district court seeking the dismissal of the Hospital's appeal would result in a waiver. Later, in its petition to set aside the district court's decision on that motion to dismiss, the Hospital belatedly sought to raise the issue, but the appeal to this Court was from the initial order, not the decision or the motion to set aside.

## II.

### PENDING APPLICATIONS FOR ADDITIONAL GOVERNMENT BENEFITS DO NOT CONSTITUTE "AVAILABLE RESOURCES"

■ Because we determine that an appeal from the County's ruling was proper, it is appropriate to address the substantive issue in the case, that is, whether the possibility of future benefits from other governmental agencies constitutes an "available resource" relieving the County of its obligation to pay a medical indigency claim until such time that a "final" decision on eligibility for those benefits is rendered.

The Hospital contends that the applicable medical indigency statutes, found at I.C. tit. 31, chapters 34 & 35, and Idaho case law precedent require any alternate resources to be accessible *immediately* when determining eligibility for county assistance. The County contends, on the other hand, that *potential* SSI and medicaid benefits constitute available resources, relieving it of a present obligation to grant a hospital's medical indigency application. The Hospital has the better position.

According to I.C. § 31–3502(1), " '[m]edically indigent' means any person who is in need of hospitalization and who ... does not have income and other resources *available* to him from whatever source which shall be sufficient to enable the person to pay for necessary medical services." (Emphasis added.) The present controversy, and one which has plagued this state since the medical indigency statutes were enacted, can be distilled to determining what the legislature intended by the term "available." In other words, what is a functionally reasonable time within which a county should evaluate an indigency claim before it must render a ruling, and correspondingly, how long must a hospital provider wait to be compensated on that claim?

Idaho Code § 31–3502(1)'s definition of a medical indigent as one who "does not have income and other resources *available* to him from whatever source," does not imply that a county may table its examination of an indigency application indefinitely until it eventually receives information which may allow it to deny the application. To the contrary, "available" has been defined as "accessible for use: at hand," [3] "capable of use for the accomplishment of a purpose:

---

**3.** Webster's II New Riverside University Dictio- nary 141 (1988).

immediately utilizable,"[4] and "capable of being obtained or used."[5] The more reasonable interpretation is that "available" in I.C. § 31–3502(1) denotes *currently* or *immediately* obtainable income or resources and a corresponding *present* ability to pay, rather than a future ability to pay, or a potential future ability to pay.

Many Idaho cases also illustrate the foregoing principle that the more reasonable interpretation of an "available" resource is a *currently* or *immediately* obtainable resource and a corresponding *present* ability to pay. First, *Braun v. Ada County*, 102 Idaho 901, 643 P.2d 1071 (1982), revolved around whether federal funding under the Hill–Burton Act constituted an available resource which excused the affected county from paying an indigent medical claim. Under the Hill–Burton Act a hospital agrees to provide a certain amount of indigent care and write the cost off as a loss, in exchange for monies to construct and modernize its facilities. This Court held that because the cost of providing care for indigents is not actually paid under Hill–Burton, but simply written off, it did not constitute "a resource available for the satisfaction of debts incurred by the medically indigent," because "other resources" must be actual funds compensating the hospital. *Braun,* 102 Idaho at 904, 643 P.2d at 1074. We continued, "[t]he fact that the words 'from whatever source' [in I.C. § 31–3502(1)] are used to describe the words 'resources available' should not obscure the fact that both terms are used in the context of enabling the indigent person 'to *pay* for necessary medical services.' " *Id.* (Emphasis added in *Braun*).

Our Court of Appeals, in *Intermountain Health Care v. Board of County Commrs. of Blaine County*, 107 Idaho 248, 688 P.2d 260 (Ct.App.1984), also faced the question as to which, if any, of a medical indigent's resources may be considered in determining his or her eligibility for county assistance. There, the applicant had a thirty percent interest in a restaurant. The physical assets of the restaurant were valued at $90,000, so the County Board of Commissioners assigned $30,000 of that value to the applicant as personal property. The Court of Appeals rejected that determination, holding that the applicant's interest was not an available resource. The court reasoned that assets which cannot be converted into cash must be excluded from the applicant's resources, and that the prospective value of the restaurant was irrelevant in determining the value of the applicant's presently *available resources.*

Five years later, this Court reiterated the foregoing proposition, stating, "[i]n determining the resources of a medically indigent person, a resource must have a positive value greater than its liabilities, encumbrances, and indebtedness, and must be liquid and *readily convertible into cash." University of Utah Hosp. v. Board of County Commrs. (Scarberry)*, 116 Idaho 434, 436, 776 P.2d 443, 445 (1989) (*citing Intermountain Health Care, Inc. v. Bd. of Cty. Com'rs*, 109 Idaho 299, 303, 707 P.2d 410, 414 (1985)) (emphasis added).

The lesson learned from *Braun, Intermountain Health Care* and *Scarberry* is that resources of a medically indigent patient must be actual funds, liquid, and available for present application to or payment of the patient's medical debt, as distinguished from a promise of payment at some future time. This same analysis readily applies to the case before us. An application that is pending or has not been decided in the appellate stage provides no readily accessible funds with which an indigent's medical bills can be discharged.

One recently decided case, *St. Alphonsus Reg. Medical Ctr. v. Canyon County*, 120 Idaho 420, 816 P.2d 977 (1991), could be construed as contrary. The foremost issue there was whether an application for medical assistance was timely filed within thirty days of the date that the patient Schoenfelder's medical indigency was established. We stated that Schoenfelder had not become medically indigent until the Industrial Commission denied his claim and "it was

---

4. Webster's Third New International Dictionary 150 (1967).

5. Roget's II The New Thesaurus 36 (1980).

actually determined that the worker's compensation benefits were not available as a source of payment." *Id.* at 424, 816 P.2d at 981. That statement was not crucial to our ultimate holding; the critical holding in that case was that the County was not prejudiced by the hospital's untimely application for benefits. Schoenfelder's application would not have met the filing requirement no matter whether medical indigency was established when the Commission denied the claim, or at an earlier time. However, to the extent that *St. Alphonsus* appears to stand for the proposition that an "available resource" includes a potential benefit from a governmental agency, and does not become *un*available until an official negative ruling by that agency, we disavow it. Even the first of potentially many decisions on eligibility for some type of government relief may be a long time coming, which is repugnant to the goal of the medical indigency act.

Viewing the medical indigency act as a whole, it is apparent that the underlying premise is to "keep the ball rolling," a premise that the system, though it might falter, cannot be allowed to come to a standstill, which would be the result of the statutory interpretation urged upon us by the County. It would be a denial of justice to make distant hospitals wait indefinitely for payment of just claims, perhaps until some point in the future when it can be authoritatively declared, beyond challenge, that all other potentially available resources have been exhausted.

The legislative intent behind the medical indigency statutes supports the conclusion that a county must make a speedy finding on indigency with reference to what funds are immediately utilizable, not potentially so, and then if appropriate, make expedient payment. The policy behind the medical indigency statutes is clearly expressed in I.C. § 31-3501:

Declaration of policy—In order to safeguard the public health, safety and welfare, and to provide suitable facilities and provisions for the care and hospitalization of indigent persons in this state, and *to provide for the payment thereof,* the respective counties of this state shall have the duties and powers as hereinafter provided.

(Emphasis added.) This Court has interpreted the passage as indicating a statutory objective of

assur[ing] that medical facilities receive payment for the services rendered by them. [Footnote omitted]. Such an objective goes hand in hand with the stated intent of providing "suitable facilities and provisions for the care and hospitalization of indigent persons," since *the financial solvency and stability of medical facilities is an important aspect of assuring that the desired medical services and facilities are available.*

*Braun,* 102 Idaho at 904, 643 P.2d at 1074 (emphasis added). It follows that in order to ensure the "financial solvency and stability of medical facilities," medical facilities must be assured of prompt receipt of payment, which necessarily entails that the affected, charged county is required to move promptly in determining its potential liability regarding a medical indigency application. Due to the paramount importance of these lofty goals aimed at preserving the accessibility of medical treatment for indigents and the viability for hospitals of providing such treatment, the hardship of any waiting period while applications for other government benefits are processed must fall to the counties, not the hospitals.

We believe the legislature intended this result and point to the statutory protections in favor of counties found at I.C. §§ 31-3509 & 31-3510. Section 31-3509 provides "[i]n the event any payments are thereafter received for charges which have been paid by a county ... said sums shall be paid over to such county." Section 31-3510 provides for a county's right of subrogation to the rights of the hospital and the medical indigent against any third parties who may be liable for the hospital charges. The fact that the indigency statutes contain provisions allowing counties to recover funds later received by the indigent applicant or the hospital provider supports our ruling that the burden of any waiting period in receiving funds must be sustained by the County rather than by the Hospital. A

county is obliged to (1) recognize a circumstance of indigency whenever it cannot establish that *currently obtainable* resources exist, (2) pay the Hospital's medicaid-adjusted fees, and later, when appropriate, (3) recover the fees paid by exercising its subrogation rights. Only by adhering to such procedures will the purpose of the medical indigency statutes be furthered in an effective manner and thus maintain the feasibility of the provision of indigent care by hospitals.

The County is correct in arguing that in the context of medicaid, it cannot receive reimbursement directly because those payments can only be made to a health care provider. It is also correct in arguing that the Hospital has no legal right to demand payment by medicaid once the Hospital has received payment from the County; medicaid providers must accept medicaid payment as payment in full. However, this presents no real obstacle to the County recovering funds which medicaid ultimately admits responsibility for. To alleviate any potential problem, once it has been conclusively determined that medicaid will pay a bill, the Hospital simply refunds to the County money previously received from the County and then bills medicaid. This procedure has been approved by the Idaho Department of Health and Welfare, and assures that the County ultimately will not be responsible for charges covered by medicaid. R. at 72.

In light of the plain meaning of the term "available," the legislatively expressed policy, as well as the foregoing analyses of this Court in *Braun* and *Scarberry* and the Court of Appeals in *Intermountain Health Care,* the role of Idaho counties is clear: the affected county must expeditiously render a ruling on a medical indigency application with reference to *existing* sources which are *then available* to pay the applicant's bill, and if appropriate, pay the claim as soon as reasonably possible. Pending applications for additional government relief do not satisfy the statutory requirement of "available."

## III.

## THE HOSPITAL IS NOT ENTITLED TO PREJUDGMENT INTEREST

 The district court awarded the Hospital $3355.18 in prejudgment interest, calculated by applying a twelve percent annual accrual rate to the judgment award of $17,209.69. Based upon I.C. § 31–3407 and *Hardcastle v. Board of County Commrs.,* 110 Idaho 956, 719 P.2d 1216 (1986), the court reasoned that interest should run from the date the County received the application up to the date judgment was entered.

We must disagree. Idaho Code § 31–3407 allows health care providers compensation from a county for emergency services rendered prior to approval of an indigency application. *Hardcastle* stands for the proposition that a county is liable for claims arising from the date of the county's receipt of an application in instances where the application is approved pursuant to I.C. § 31–3505. Section 31–3505 deems that an application is automatically approved if the board of county commissioners fails to act upon it within sixty days of its receipt. The court there held that deeming the application approved upon the expiration of the sixty-day time period, rather than on the date of the application's receipt, would reduce the amount reimbursable to the provider, contrary to the intent of § 31–3505.

Neither of the foregoing propositions convinces us that the County should be liable for prejudgment interest from the date the County received the application. It is a general precept of sovereign immunity that a governmental unit can be sued only upon its consent. *American Oil Co. v. Neill,* 90 Idaho 333, 338, 414 P.2d 206, 209 (1966); *Davis v. State,* 30 Idaho 137, 143, 163 P. 373, 209 (1917). The same doctrine prevents assessment against the state for interest on its debts, without consent. *See* Idaho Constitution, art. 7 § 13 ("[n]o money shall be drawn from the treasury, but in pursuance of appropriations made by law"); *American Oil,* 90 Idaho at 338, 414 P.2d at 209; *see e.g., Masse v. State Dept of Highways,* 204 Mont. 146, 664 P.2d 890 (1983); *Architectural Woods,*

*Inc. v. State*, 92 Wash.2d 521, 598 P.2d 1372 (1979); *Norris v. State*, 46 Wash.App. 822, 733 P.2d 231 (1987); *Hyde v. Wellpinit School Dist. No. 49*, 32 Wash.App. 465, 648 P.2d 892 (1982).

Generally, such consent is evidenced by the state constitution or a legislative mandate allowing the assessment of interest against the state, and in the absence of constitutional language or a specific statute, the state may not pay interest. *Davis v. State; Martin Marietta Corp. v. Division of Employment & Training, Dept. of Labor & Employment*, 784 P.2d 850 (Colo. App.1989). An alternate way to find consent to payment of interest may be by virtue of an express or implied contractual provision, but that method is immaterial here. *Bond v. State*, 70 Wash.2d 746, 425 P.2d 10 (1967).

Neither does the existence of a general statute regarding the rate of interest and the allowance of interest between parties to actions automatically include the state within its purview. *American Oil*, 90 Idaho at 337, 414 P.2d at 209 (citing *Engebretson v. City of San Diego*, 185 Cal. 475, 197 P. 651 (1921); and *Savings & Loan Soc. v. City & County of San Francisco*, 131 Cal. 356, 63 P. 665 (1901)); *Richland County v. State*, 180 N.W.2d 649 (N.D.1970); *East Orange v. Board of Chosen Freeholders*, 84 N.J.Super. 242, 201 A.2d 586 (1964); *Bond v. State*. In order to overcome the presumption of sovereign immunity, there must be a more specific assertion by the legislature. Therefore, the County cannot rely upon the Idaho general statute on recovery of interest, I.C. § 28–22–104(1), in this case. Because it is clear that nothing in Idaho's medical indigency statutes authorizes us to impose prejudgment interest against the County, we decline to do so.

In *County of Ada v. Red Steer Drive-Ins, Etc.*, 101 Idaho 94, 609 P.2d 161 (1980), this Court held that neither the state nor any of its political subdivisions are expressly exempted in I.C. § 28–22–104 from paying interest on amounts due *on a judgment* rendered against them. That holding overruled *American Oil* to the extent that *American Oil* prohibited a post-judgment interest award against a government entity on an overpayment of tax. *Red Steer*, 101 Idaho at 100, 609 P.2d at 167. The holding in *Red Steer* was admittedly based upon "equitable" principles and should be limited to the facts of that case. *See Id.* at 100, 609 P.2d at 167; and *Id.* at 101, 609 P.2d at 168 (McFadden, J., concurring in part and dissenting in part). It does not affect our adherence to the general rule set forth in *American Oil;* we decline to extend its rationale to the issue of pre-judgment interest at stake in the present case.

## IV. NO ATTORNEY FEES AWARDED

Each party requests attorney fees on this appeal. The County also requests attorney fees for its defense of the initial appeal to the district court. Attorney fees will be awarded to the prevailing party on appeal when we are left with the abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably or without foundation. I.A.R. 54(e)(1); *Minich v. Gem State Developers*, 99 Idaho 911, 591 P.2d 1078 (1979).

The district court, while ruling in favor of the Hospital, found that the County's position was "most certainly incorrect" but not so fallacious that it could be deemed frivolous, unreasonable or without foundation. We agree with the district court and for the same reason deny the Hospital's request for attorney fees on appeal to this Court.

Costs on appeal to the Hospital.

BAKES, C.J., and REINHARDT, J. Pro Tem, concur.

McDEVITT, J., dissents without opinion.

JOHNSON, Justice, concurring and dissenting.

I concur in part I of the lead opinion, but I respectfully dissent from part II. Because of my dissent from part II, I view parts III and IV as dicta.

I would hold that *St. Alphonsus Regional Medical Ctr. v. Canyon County*, 120 Idaho 420, 816 P.2d 977 (1991), controls the decision on the issue addressed in part II.

In *St. Alphonsus,* the Court concluded that a person does not become medically indigent until an application for workers' compensation benefits is denied. *Id.* at 424, 816 P.2d at 981. This conclusion was necessary to the Court's decision, because it controlled the Court's ruling that the application was filed only five days late. While it is true that the Court then concluded that the untimely filing of the application did not prejudice the county, the Court would not have reached this conclusion if it had not first determined that the application was filed only five days late.

In this case, based on *St. Alphonsus,* I would rule that Morrison did not become medically indigent while the applications for SSI and medicaid benefits were pending. I also note that the district judge did not have *St. Alphonsus* available when he made his decision in this case, because *St. Alphonsus* was decided more than a year after the district judge's ruling.

In my view, the holding in *St. Alphonsus* as applied to the facts in this case dictates that Morrison was not medically indigent while the SSI and medicaid applications were pending.