HORTON, Justice.
This is an appeal from the district court’s decision affirming the determination of the Board of County Commissioners of Gooding County (the Board) that Megan Freeman is not medically indigent and that therefore St. Luke’s Magic Valley Regional Medical Center, LTD., (St. Luke’s) is not entitled to payment from Gooding County (the County) on Freeman’s behalf. We affirm.
I. FACTUAL AND PROCEDURAL BACKGROUND
In 2007, St. Luke’s provided $19,419.91 worth of emergency medical services to Freeman. Pursuant to Chapter 35, Title 31, entitled “Hospitals for Indigent Sick,” Freeman filed a Uniform County Medical Assistance Application with the Board, requesting that the County reimburse St. Luke’s for the cost of her medical care. The Board denied the application.
St. Luke’s then requested that the prelitigation screening panel of the Idaho Department of Health and Welfare review the application. The panel did so and concluded that Freeman “appears to be medically indigent.” St. Luke’s next filed a petition for judicial review of the Board’s denial with the district court. On June 25, 2008, the district court remanded the case to the Board and directed it to make findings of fact that comply with this Court’s requirements as set out in Crown Point Development, Inc. v. City of Sun Valley, 144 Idaho 72, 156 P.3d 573 (2007).
Upon remand, the Board issued amended findings of fact and conclusions of law. After the Board issued the amended findings, St. Luke’s again petitioned the district court for review. The district court affirmed the Board’s decision.
St. Luke’s appeals, arguing that the Board erred in imputing income to Freeman, who is voluntarily unemployed outside of her home, and in considering her potential income tax refunds in determining that she is not medically indigent. Both parties ask for attorney fees.
II. STANDARD OF REVIEW
Idaho Code § 31-3505G provides that:
If, after a hearing as provided in section 31-3505E, Idaho Code, the final determination of the board is to deny an application for financial assistance with necessary medical services, the applicant, or a third party making application on an applicant’s behalf, may seek judicial review of the final determination of the board in the manner provided in section 31-1506, Idaho Code.
In turn, Idaho Code § 31-1506 provides that an applicant who is denied by the Board must seek judicial review of the Board’s decision “within the same time and in the same manner as provided in chapter 52, title 67, Idaho Code, for judicial review of actions.” Therefore,
[judicial review of [the Board’s] order is limited to the record. A reviewing court may not substitute its judgment for that of the [Board] on questions of fact, and will uphold [the Board’s] finding of fact if supported by substantial and competent evidence. A reviewing court may reverse the [Board’s] decision or remand for further proceedings only if substantial rights of the appellant have been prejudiced. I.C. § 67-5279(4). This Court reviews [the *587 Board’s] decision independently of the district court’s appellate decision.
Application of Ackerman, 127 Idaho 495, 496-97, 903 P.2d 84, 85-86 (1995) (internal citations omitted).
When the [Board] was required ... to issue an order, the court shall affirm the [Board’s action] unless the court finds that the [Board’s] findings, inferences, conclusions, or decisions are: (a) in violation of constitutional or statutory provisions; (b) in excess of the statutory authority of the [Board]; (c) made upon unlawful procedure; (d) not supported by substantial evidence on the record as a whole; or (e) arbitrary, capricious, or an abuse of discretion.
Saint Alphonsus Regl. Med. Ctr., Inc. v. Bd. of County Commrs. of Ada Cnty., 146 Idaho 51, 53, 190 P.3d 870, 872 (2008) (quoting Idaho Code § 67-5279(3)). “Determining the meaning of a statute is a matter of law.” Id. (citation omitted).
When this Court reviews a decision of a district court acting in its appellate capacity, it reviews the [Board] record to determine whether there is substantial and competent evidence to support the [Board]’s findings of fact and whether the [Board]’s conclusions of law follow from those findings. If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the [Board]’s decision, we affirm the district court’s decision as a matter of procedure.
Losser v. Bradstreet, 145 Idaho 670, 672, 183 P.3d 758, 760 (2008) (quoting Nicholls v. Blaser, 102 Idaho 559, 561, 633 P.2d 1137, 1139 (1981)).
III. ANALYSIS
St. Luke’s urges that the district court erred in affirming the Board’s determination that Freeman is not indigent because the Board erred in imputing income and income tax refunds to Freeman. Both parties ask for attorney fees. We address each issue in turn.
A. The district court did not err in affirming the Board’s determination that Freeman is not medically indigent as defined in Chapter 35, Title 31.
St. Luke’s contends that the Board erred when it determined Freeman is not indigent because it based that decision on the fact that Freeman is voluntarily unemployed outside of her home. St. Luke’s argues that previous decisions by this Court do not compel the Board to impute income to Freeman in determining whether, under I.C. § 31-3502, she is medically indigent. St. Luke’s further argues in its reply brief that I.C. § 31-3510A(6), regarding a county’s ability to require a medically indigent person whose bills the county has paid to obtain employment, is the only provision in Chapter 35 that makes reference to a patient’s ability to work. St. Luke’s infers from this single reference that the Legislature did not intend that potential income from employment could be considered when determining whether a patient is indigent under I.C. § 31-3502. St. Luke’s also contends that the Board erred in considering Freeman’s potential income tax return in making its determination.
We first address St. Luke’s argument that the statutory framework governing medical indigency indicates that the Legislature did not intend for the Board to consider Freeman’s ability to work in considering her application for county assistance.[1] Next, we address St. Luke’s argument regarding the case law interpreting the statutory definition of “medically indigent;” and finally we examine whether the Board erred in considering Freeman’s potential income tax return as a resource.
*588 In interpreting a statute, it is this Court’s duty to ascertain and give effect to legislative intent by reading the entire act, including amendments. George W. Watkins Family, 118 Idaho at 539-40, 797 P.2d at 1387-88. The definition of “medically indigent” at the time of Freeman’s application was provided by I.C. § 31 — 3502(1).[2] The statute provides that:
“Medically indigent” means any person who is in need of necessary medical services and who, if an adult, together with his or her spouse, or whose parents or guardian if a minor, does not have income and other resources available to him from whatever source sufficient to pay for necessary medical services. Nothing in this definition shall prevent the board of county commissioners and administrator from requiring the applicant and obligated persons to reimburse the county and the catastrophic health care costs program, where appropriate, for all or a portion of their medical expenses, when investigation of their application pursuant to this chapter, determines their ability to do so.
Idaho Code § 31-3502(17)[3] states that:
“Resources” means all property, whether tangible or intangible, real or personal, liquid or nonliquid, including, but not limited to, all forms of public assistance, crime victim’s compensation, worker’s compensation, veterans benefits, medicaid, medicare and any other property from any source for which an applicant and/or an obligated person may be eligible or in which he or she may have an interest. Resources shall include the ability of an applicant and obligated persons to pay for necessary medical services over a period of up to five (5) years. For purposes of determining approval for medical indigency only, resources shall not include the value of the homestead on the applicant or obligated persons’ residence, a burial plot, exemptions for personal property allowed in section 11-605(1) through (3), Idaho Code, and additional exemptions allowed by county resolution.
Although the latter definition includes “the ability of an applicant . to pay for necessary medical expenses,” it does not explicitly refer to potential or imputed income, thereby failing to expressly answer the main question raised in this appeal: Is potential income a resource that the Board may consider in determining indigency? St. Luke’s and the dissent contend that because I.C. § 31-3510A(6) is the only provision in the medical indigency statutory scheme that expressly mentions potential income, the Legislature intended the answer to the above question to be “no.” The dissent states that “[u]ntil a person is found to be medically indigent and has received benefits, there can be no reimbursement and I.C. § 31-3510A(1) cannot be applied.” From this statement, which we believe to be an accurate statement of law, the dissent concludes that “I.C. § 31-3510A(6) cannot be read in conjunction with I.C. § 31-3510A(1) ... to expand the scope of what constitutes a ‘resource’ for purposes of determining eligibility for medical indigency benefits.” We disagree.
Our starting point is the Legislature’s express declaration found in I.C. § 31-3501[4]: “It is the policy of this state that each person, to the maximum extent possible, is responsible for his or her own medical care ____” Consistent with this policy, I.C. § 31-3510A, entitled “Reimbursement,” requires anyone who receives financial assistance for medical expenses from a county to reimburse the county “for such reasonable portion of the financial assistance paid on behalf of the applicant as the board may determine that the applicant is able to pay from resources over a reasonable period of time.” I.C. § 31-3510A(1) (emphasis added). Idaho Code § 31-3510A(6) further provides that in seeking reimbursement, “[t]he board may require the employment of such of the medically indigent as are capable and able to work and whose attending physician certifies they *589 are capable of working.” St. Luke’s argues that because this provision is the only one that expressly mentions potential income, the Legislature must have intended that the Board consider potential income when determining how much a person is required to reimburse the County, but not when considering whether a person is indigent in the first place.
When I.C. §§ 31-3510A(1) and (6) are read together, it is clear that the Legislature intended for the potential income of an able-bodied person to be considered as a “resource” from which that person may be obligated to reimburse the county. We do not view the Legislature as having intended the word “resources” to have different meanings within Chapter 35, Title 31. Indeed, I.C. § 31-3502 declares that “[a]s used in this chapter, the terms defined in this section shall have the following meaning, unless the context clearly indicates another meaning .... ” This declaration is consistent with long-standing rules of statutory interpretation. ‘“Other portions of the same act or section may be resorted to as an aid to determine the sense in which a word, phrase, or clause is used, and such phrase, word, or clause, repeatedly used in a statute, will be presumed to bear the same meaning throughout the statute, unless there is something to show that there is a different meaning intended, such as a difference in subject-matter which might raise a different presumption.’” Kerley v. Wetherell, 61 Idaho 31, 41, 96 P.2d 503, 508 (1939) (quoting Sprouse v. Magee, 46 Idaho 622, 631, 269 P. 993, 996 (1928)).
In view of the explicit mandate that the terms defined in I.C. § 31-3502 are to be consistently afforded the same meaning throughout the chapter, if the Board should consider potential income as a resource under I.C. § 31-3510A for purposes of reimbursement, it should also consider potential income as a resource under I.C. § 31-3502(1), regarding medical indigency. This conclusion is in keeping with the definition of “medically indigent” which considers both income and other resources.
The dissent, focusing heavily on Freeman’s present inability to pay for the cost of her medical care and relying on our decision in Univ. of Utah Hosp. and Med. Ctr. v. Twin Falls Cnty., 122 Idaho 1010, 842 P.2d 689 (1992), asserts that “the hardship of any waiting period for payment must fall on the counties, not hospitals.” It is true that this Court stated in that case that “[t]he more reasonable interpretation is that ‘available’ in I.C. § 31-3502(1) denotes currently or immediately obtainable income or resources and a corresponding present ability to pay, rather than a future ability to pay, or a potential future ability to pay.” Id. at 1015, 842 P.2d at 694 (emphasis original). However, in 1996, the Legislature rejected this Court’s view of a “more reasonable interpretation,” defining “resources” to “include the ability of an applicant and obligated persons to pay for necessary medical services over a period of up to three (3) years.” 1996 Idaho Sess. Laws ch. 410, § 3, p. 1360. Evidently satisfied with the hospitals’ ability to wait for payment, in 2005 the Legislature extended the period to five years. 2005 Idaho Sess. Laws ch. 281, § 1, p. 917. In view of these actions, we are unable to reach the dissent’s conclusion regarding the allocation of hardship. Our conclusion that a patient’s potential income may properly be considered as a “resource” is also consistent with previous decisions from this Court.
In 1984, when this Court decided Carpenter v. Twin Falls County, 107 Idaho 575, 691 P.2d 1190 (1984), I.C. § 31-3502(1) defined “medically indigent” as “any person who is in need of hospitalization and who, if an adult, together with his or her spouse, ... does not have income and other resources available to him from whatever source which shall be sufficient to enable the person to pay for necessary medical services.” Carpenter, 107 Idaho at 583, 691 P.2d at 1198. Idaho Code § 31-3502 did not yet contain an express definition of “resources.” 1984 Idaho Sess. Laws ch. 99, § 1, p. 227. Against this statutory backdrop, Carpenter applied for county assistance for medical bills incurred in connection with his wife’s terminal illness. Carpenter, 107 Idaho at 577, 691 P.2d at 1192. He quit his job after making the application. Id. at 579, 691 P.2d at 1194. On appeal, it was claimed that he “clearly was medically *590 indigent because at the time of the hearing before the [Board] he had virtually no income.” Id. at 585, 691 P.2d at 1200. This Court ultimately held that “[e]ven if we assume that Carpenter was capable of earning the income he was receiving at the time his application was filed ... the facts set forth above demonstrate that Mr. Carpenter” is indigent. Id. The Court also stated, however, that it was proper for the commission “to consider all the facts, including that Mr. Carpenter was a healthy individual who had voluntarily quit his job.” Id.
This Court later decided Application of Ackerman, 127 Idaho 495, 903 P.2d 84 (1995). At that time, the act defined “medically indigent” just as it had in Carpenter and did not yet expressly define “resources.” 127 Idaho at 497, 903 P.2d at 86; 1993 Idaho Sess. Laws ch. 112, § 1, p. 283. The appellant in Ackerman argued that he met the definition of “medically indigent” because he did not have a reserve of funds to pay off his medical bills all at once. 127 Idaho at 497, 903 P.2d at 86. The Court disagreed, stating that “Ackerman presently has the .ability to pay off his medical expenses in a reasonable time ... but for his lifestyle choices.” Id. at 497-98, 903 P.2d at 86-87. The lifestyle choices the Court was referring to were Ackerman’s discretionary expenditures, including satellite television service, cell phone service, and credit card debt. Id. at 498, 903 P.2d at 87.
In view of the statutory framework and these two decisions, we find no legal error in the Board’s determination that it was proper to impute income to Freeman as a “resource.” We do not criticize Freeman’s choice not to work outside her home; we are simply unable to agree with St. Luke’s contention that the taxpayers of Gooding County are required to provide financial assistance in support of that choice.
There is substantial evidence in the record that supports the Board’s imputation of a minimum wage income to Freeman. Freeman testified that she is “able-bodied and able to work.” She further testified that she has previously worked outside of the home, and that it was her intention to look for work in the future “if need be.”
St. Luke’s also asserts that the Board erred by imputing future tax refunds to Freeman when evaluating her resources. St. Luke’s relies on the decision in Univ. of Utah Hosp. and Med. Ctr. v. Twin Falls Cnty., 122 Idaho 1010, 842 P.2d 689 (1992), in support of its argument that the Board imputing a tax refund to Freeman was legal error. The issue in Univ. of Utah Hosp. and Med. Ctr. involved the question of whether a county could consider the possibility of future benefits from other governmental agencies as an “available resource” in making indigency determinations. 122 Idaho at 1014, 842 P.2d at 693. The Court held that:
Viewing the medical indigency act as a whole, it is apparent that the underlying premise is to “keep the ball rolling,” a premise that the system, though it might falter, cannot be allowed to come to a standstill, which would be the result of the statutory interpretation urged upon us by the County. It would be a denial of justice to make distant hospitals wait indefinitely for payment of just claims, perhaps until some point in the future when it can be authoritatively declared, beyond challenge, that all other potentially available resources have been exhausted.
Due to the paramount importance of these lofty goals aimed at preserving the accessibility of medical treatment for indigents and the viability for hospitals of providing such treatment, the hardship of any waiting period while applications for other government benefits are processed must fall to the counties, not the hospitals.
122 Idaho at 1016, 842 P.2d at 695. The Legislature evidently disagreed with this analysis of the policies underlying the act, because in 1996, “resources” were defined for the first time and specifically included “all forms of public assistance, crime victim’s compensation, worker’s compensation, veterans benefits, medicaid, medicare ... for which an applicant and/or an obligated person may be eligible.” 1996 Idaho Sess. Laws ch. 410, § 3, p. 1360. At the same time, the Legislature expressly provided that “resources” would include the ability to pay for the medical services within a three year peri *591 od. Id. In light of this legislative declaration of policy, we cannot conclude that it was legal error for the Board to impute future tax refunds as a resource when determining if Freeman was medically indigent.
We find that there was substantial evidence before the Board to support the factual determination that $4,000 per year should be imputed for future tax refunds. If Freeman works, taxes will be withheld and her income, combined with that of her spouse, will fall somewhere between that which they earned in 2005 and that which they earned in 2006 and their income tax refund will likewise be somewhere between what they received in 2005 and what they received in 2006. The Freemans had a combined income of $28,023 in 2005 and $23,067 in 2006. They received an income tax refund of $4,062 in 2005 and a refund of $5,447 in 2006. The Board imputed a future combined income of $26,188.32 and a future income tax refund of $4,000 to the Freemans. To support its argument that this imputation is clearly erroneous, St. Luke’s points to Freeman’s testimony that she did not “know with reasonable certainty what [her] tax refund is going to be next year.” Freeman’s uncertainty, however, does nothing to undermine the Board’s finding, which is based upon substantial, competent evidence in the record.
For the foregoing reasons, we affirm the district court’s decision affirming the Board’s determination.
B. Neither party is entitled to attorney fees on appeal.
While St. Luke’s has asked for attorney fees, it has not prevailed, and is therefore not entitled to an award. The Board requests attorney fees on appeal pursuant to I.C. § 12-117. An award is appropriate under this provision if this Court finds that St. Luke’s pursued this appeal without a reasonable basis in fact or law. Mercy Med. Ctr. v. Ada Cnty., Bd. of County Commrs. of Ada County, 146 Idaho 226, 233, 192 P.3d 1050, 1057 (2008).
There are two factors which lead this Court to conclude that St. Luke’s has not pursued this appeal without a reasonable basis in fact or law. First, the question whether potential income may be considered as a resource is a legal question of first impression before this Court. Second, the prelitigation screening panel found Freeman to be medically indigent, suggesting that St. Luke’s factual assertions may have had merit. We therefore decline to award the Board attorney fees.
IV. CONCLUSION
We affirm the district court’s decision affirming the Board’s determination that Freeman is not medically indigent. No attorney fees on appeal. Costs to the County.
Justice Pro Tern TROUT concurs.

. St. Luke's raises this argument for the first time in its reply brief on appeal, and this Court will not normally consider arguments raised for the first time in the appellant’s reply brief. Suitts v. Nix, 141 Idaho 706, 708, 117 P.3d 120, 122 (2005). However, because the Court is also required to read an act in its entirety when interpreting a statute, George W. Watkins Family v. Messenger, 118 Idaho 537, 539-40, 797 P.2d 1385, 1387-88 (1990), we address St. Luke’s argument with respect to I.C. § 31-3510A. St. Luke’s also raises an issue concerning the Board's use of the figure $1,433.01 for Robert Freeman’s net income; however, because it raises this issue for the first time in its reply brief, according to the general rule, we decline to address it.

.All statutory citations in this opinion will refer to those in effect at the time of Freeman’s application. Where applicable, the current statutory citation will be identified by way of footnote. The definition of "medically indigent” is currently codified at I.C. § 31-3502(15) (2010).

. This paragraph is currently codified at I.C. § 31-3502(23) (2010).

. This provision is now codified as I.C. § 31-3501(1) (2010).