BURDICK, J.,
dissenting.
For the reasons stated below, I dissent from the majority opinion. The facts as related by the majority are correct, as is the standard of review, and need not be reviewed here.
On appeal, St. Luke’s correctly argues that the district court erred in affirming the Board’s determination that Megan Freeman is not medically indigent because the Board improperly found that speculative future income constitutes a resource for the purpose of determining eligibility for medical indigency benefits.
In concluding that speculative future income does not constitute a resource, this analysis will first explore the scope of the *593 term “resources,” as it is defined by the plain language of chapter 35, title 31, Idaho Code, the Medical Indigency Act (the Act); next, the legislative intent for the Act; and finally, the case law cited by the district court and the majority to improperly find that speculative income constitutes a resource.
A. The plain language of the Medical Indigency Act
The plain language of the Act does not support the Board’s finding that speculative future income is a resource for the purpose of determining an individual’s status as medically indigent. As this Court wrote in Doe v. Boy Scouts of America, “statutory interpretation begins with the literal words of a statute, which are the best guide to determining legislative intent.” 148 Idaho 427, 430, 224 P.3d 494, 497 (2009). “The plain meaning of a statute will prevail unless clearly expressed legislative intent is contrary or unless the plain meaning leads to absurd results.” Action Collection Serv., Inc. v. Haught, 146 Idaho 300, 303-304, 193 P.3d 460, 463-464 (Ct.App.Idaho 2008).
Idaho Code § 31-3502(1)[5] defines “medically indigent” as “any person who is in need of necessary medical services and who, if an adult, together with his or her spouse, or whose parents or guardian if a minor, does not have income and other resources available to him from whatever source sufficient to pay for necessary medical services.” The Act was amended in 2005 to define “resources” under I.C. § 31-3502(17)[6] as:
[A]ll property, whether tangible or intangible, real or personal, liquid or nonliquid, including, but not limited to, all forms of public assistance, crime victim’s compensation, worker’s compensation, veterans benefits, Medicaid, Medicare and any other property from any source for which an applicant and/or an obligated person may be eligible or in which he or she may have an interest. Resources shall include the ability of an applicant and obligated persons to pay for necessary medical services over a period of up to five (5) years. For purposes of determining approval for medical indigency only, resources shall not in-elude the value of the homestead on the applicant or obligated persons’ residence, a burial plot, exemptions for personal property allowed in section 11-605(1) through (3), Idaho Code, and additional exemptions allowed by county resolution.
5.L. 2005, ch. 281, § 1. The plain language of I.C. § 31-3502(17) does not include speculative future income as a resource for the purpose of determining an individual’s status as medically indigent. Many presently held forms of capital, such as real property; as well as future forms of capital that are definite, guaranteed, and clearly measurable— such as Medicare benefits — are enumerated as “resources” by I.C. § 31-3502(17). However, speculative future income is not similar to any of the enumerated future forms of capital because it is not guaranteed and is subject to uncontrollable variables that make it incapable of being definite or clearly measurable.
The majority concedes that I.C. § 31-3502(17)’s definition of “resources” does not include future income. However, it argues that when every word, clause, and sentence of the Act is given effect, as must always be the case, George W. Watkins Family v. Messenger, it becomes clear that future income should properly be considered a resource in determining eligibility for medical indigency benefits. 118 Idaho 537, 540, 797 P.2d 1385, 1388 (1990).
The majority found that a comprehensive reading of I.C. § 31-3510A, entitled “reimbursement,” demonstrates that the legislature intended for potential income to be considered as a resource in determining an individual’s status as medically indigent. To reach this conclusion the majority reads subsections (1) and (6) of the reimbursement provision together.
Subsection (1) of the reimbursement provision requires recipients of financial benefits to reimburse the county for a “reasonable portion of the financial assistance paid on behalf of the applicant as the board may *594 determine that the applicant is able to pay from resources over a reasonable period of time.” I.C. § 31-3510A(1).
Subsection (6) provides that “[t]he board may require the employment of such of the medically indigent as are capable and able to work and whose attending physician certifies they are capable of working.” I.C. § 31-3510A(6).
The majority’s use of the reimbursement provision to illustrate that speculative future incomé constitutes a resource for determining eligibility for medical indigency benefits is improper. The title of I.C. § 31-3510A, “Reimbursement,” indicates that any power granted to the counties by the reimbursement provision is only applicable after the county has found that the individual is medically indigent and has also provided her with indigency benefits.
Although future income is a “resource” with respect to an individual’s ability to reimburse the county for medical assistance under I.C. § 31-3510A(1), it is not a “resource” for the purposes of determining whether an individual qualifies for medical indigency benefits in the first place. Until a person is found to be medically indigent and has received benefits, there can be no reimbursement and I.C. § 31-3510A cannot be applied. Therefore, I.C. § 31~3510A(6) cannot be read in conjunction with I.C. § 31-3510A(1), as the majority suggests, to expand the scope of what constitutes a “resource” for purposes of determining eligibility for medical indigency benefits. Rather, for a form of capital to constitute a “resource” for the purpose of determining eligibility for medical indigency benefits, authority must be found in the language of I.C. § 31-3502(17), which, in this case, does not exist.
B. The legislative purpose for the Medical Indigency Act
In addition to misapplying I.C. § 31-3510A, the majority’s reading of the reimbursement provision does not comport with the declaration of the Act as a whole. The legislative intent of the Act, articulated in I.C. § 31-3501, provides that, “in order to safeguard the public health, safety and welfare, and to provide suitable facilities and provisions for the care and hospitalization of indigent persons in this state, and to provide for the payment thereof, the respective counties of this state shall have the duties and powers as hereinafter provided.” See Univ. of Utah Hosp. and Med. Ctr. v. Twin Falls Cnty., 122 Idaho 1010, 1016, 842 P.2d 689, 695 (1992). However, the legislature also provided that “each person, to the maximum extent possible, is responsible for his or her own medical care.” I.C. § 31-3501.
This Court, in Twin Falls Cnty., held that it is not proper “to make hospitals wait indefinitely for payment of just claims” and that “financial solvency and stability” of medical facilities, achieved though prompt payment, is necessary to maintain suitable facilities. 122 Idaho at 1016, 842 P.2d at 695. Thus, the hardship of any waiting period for payment must fall on the counties, not hospitals. Id. Accordingly, in Twin Falls Cnty., this Court held that pending applications for speculative federal supplemental social security benefits were not a resource for the purpose of determining eligibility for medical indigency benefits. This Court reasoned that because the speculative social security benefits were not “readily accessible,” allowing them to constitute a resource would place the hardship of delayed payment on hospitals, which in turn would negatively effect the hospitals’ ability to provide suitable care both to medically indigent patients and the general public. 122 Idaho at 1015, 842 P.2d at 694.
It follows that allowing speculative future income to serve as a resource would result in the same hardship on hospitals seeking payment that this Court rejected in Twin Falls Cnty. The fact that the Board in this case arbitrarily found that, given the correct circumstance, Freeman would be able to pay her medical costs in no way means that such circumstantial speculation will come to fruition. Thus, the Board’s finding and the majority’s affirmance places the risk of nonpayment directly on the hospital rather than on the county, contrary to the legislative purpose and the established precedent of this Court.
Furthermore, the majority decision limits access to county funds and restricts the med *595 ieally indigent from access to aid for mandatory emergency care in contravention of the Act’s purpose of safeguarding the public health, safety and welfare. The medically indigent should not be restricted from access to financial benefits based on arbitrary conclusions of what constitutes a resource. Rather, when appropriate, the medically indigent should be granted benefits and the county should then use its legislatively provided authority to force reimbursement through employment. This will result in hospitals receiving prompt and just compensation while medically indigent patients are still forced to repay the maximum they are able to, by reimbursing the county for the care they received.
C. The district court’s erroneous case analysis
In addition to the misapplication of the reimbursement provision, the majority relies heavily on tenuous case law analogies to find that speculative future income constitutes a resource for determining whether a person is eligible for medical indigency benefits. The first case that the majority relies on is Carpenter v. Twin Falls Cnty., 107 Idaho 575, 691 P.2d 1190 (1984). In Carpenter, the applicant seeking to be found medically indigent had voluntarily quit his job after making his application to the Board. Id. at 585, 691 P.2d at 1200. This Court found that the applicant was indigent regardless of his employment status. Id. The Carpenter Court went on to find that the Board was “free to consider all the facts, including that Mr. Carpenter was a healthy individual who had voluntarily quit his job.” Id.
This court’s logic in Carpenter, allowing a Board to consider an applicant’s earning potential, is not applicable to this case for two reasons. First, and most importantly, when Carpenter was decided I.C. § 31-3502 did not contain any definition of “resources.” S.L. 1984, ch. 99, § 1. Thus, this Court was not bound by the words of the legislature in arriving at its conclusions of law. Today, however, this is not the case. Idaho Code § 31-3502(17) clearly and unambiguously enumerates what sources of capital constitute a “resource” for the purpose of initially determining medical indigency.
Second, this Court found that Carpenter was indigent regardless of his employment status, thus, the language from Carpenter that the district court relies on is dicta because it was not necessary or essential to determine the outcome of the ease. See Smith v. Angell, 122 Idaho 25, 35, 830 P.2d 1163, 1173 (1992). Such dicta “cannot be relied upon as binding precedent.” Shrives v. Talbot, 91 Idaho 338, 346, 421 P.2d 133, 141 (1966).
The majority also relies heavily on this Court’s opinion in Application of Ackerman, 127 Idaho 495, 903 P.2d 84 (1995). In Ackerman, the applicant claimed that his monthly expenses, including payments for satellite T.V., a cellular phone, and a motorcycle, rendered him medically indigent. Id. at 496, 903 P.2d at 85. This Court disagreed and stated that the applicant’s lifestyle choices could not be used as an excuse for indigency and that “Ackerman presently had the ability to pay off his medical expenses.” Id. at 497-98, 903 P.2d at 86-87.
In this case, the majority found that Freeman’s decision to care for her two children, ages five and one respectively, after another job had fallen'through, was a lifestyle choice that precluded her from receiving benefits. Strangely, the majority found that the applicant’s decision in Ackerman to frivolously spend on motorcycles, cell phones, and satellite television was sufficiently analogous to a mother’s decision to remain home and care for her children.
Regardless of whether this Court finds Freeman’s decision to care for her children is a “lifestyle choice,” the financial situation of the applicant in Ackerman is quite different from Freeman’s financial situation in this case. To reiterate, in Ackerman this Court found that, but for the applicant’s lifestyle choices he “presently h[ad] the ability to pay off his medical expenses.” Id.
However, Freeman does not have the present ability to pay off her bills by simply eliminating luxury items from her monthly costs. Instead, her ability to pay was premised on the arbitrary assumption that she *596 could promptly obtain employment, no more than 2.5 miles from home, during the hours that her husband did not work, which were the primary hours of employment, 8:00 AM to 5:00 PM.
Unlike the applicant in Ackerman, Freeman was not presently capable of paying her medical cost when she applied for benefits. Thus, this Court’s conclusion in Ackerman is not applicable to the present case.
The Board’s finding that future income constitutes a resource for the purpose of determining eligibility of medical indigency benefits was arbitrary and capricious. Likewise, the majority’s affirmance of the Board’s decision ignores the plain language of the Act, does not comport with the legislative intent for the Act, and runs counter to prior case law precedent established by this Court.

. This section is currently codified at I.C. § 31-3502(15) (2010).

. This section is currently codified at I.C. § 31-3501(23) (2010).