# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 36467

ST. LUKE'S MAGIC VALLEY REGIONAL
MEDICAL CENTER, LTD, an Idaho
nonprofit corporation

    Petitioner-Appellant,

v.

BOARD OF COUNTY COMMISSIONERS
OF GOODING COUNTY,

    Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, June 2010 Term

2010 Opinion No. 93

Filed: August 16, 2010

Stephen Kenyon, Clerk

Appeal from the District Court of the Fifth Judicial District of the State of Idaho,
Gooding County. Hon. R. Barry Wood, District Judge.

The decision of the district court is affirmed.

Law Office of Steven Pitts, P.A., Twin Falls, for appellant. Steven B. Pitts
argued.

Luverne Shull, Deputy Gooding County Prosecutor, Gooding, for respondent.

_____

HORTON, Justice

This is an appeal from the district court's decision affirming the determination of the
Board of County Commissioners of Gooding County (the Board) that Megan Freeman is not
medically indigent and that therefore St. Luke's Magic Valley Regional Medical Center, LTD.,
(St. Luke's) is not entitled to payment from Gooding County (the County) on Freeman's behalf.
We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2007, St. Luke's provided $19,419.91 worth of emergency medical services to
Freeman. Pursuant to Chapter 35, Title 31, entitled "Hospitals for Indigent Sick," Freeman filed
a Uniform County Medical Assistance Application with the Board, requesting that the County
reimburse St. Luke's for the cost of her medical care. The Board denied the application.

-1-

St. Luke's then requested that the pre-litigation screening panel of the Idaho Department of Health and Welfare review the application. The panel did so and concluded that Freeman "appears to be medically indigent." St. Luke's next filed a petition for judicial review of the Board's denial with the district court. On June 25, 2008, the district court remanded the case to the Board and directed it to make findings of fact that comply with this Court's requirements as set out in *Crown Point Development, Inc. v. City of Sun Valley*, 144 Idaho 72, 156 P.3d 573 (2007).

Upon remand, the Board issued amended findings of fact and conclusions of law. After the Board issued the amended findings, St. Luke's again petitioned the district court for review. The district court affirmed the Board's decision.

St. Luke's appeals, arguing that the Board erred in imputing income to Freeman, who is voluntarily unemployed outside of her home, and in considering her potential income tax refunds in determining that she is not medically indigent. Both parties ask for attorney fees.

## II. STANDARD OF REVIEW

Idaho Code § 31-3505G provides that:

> If, after a hearing as provided in section 31-3505E, Idaho Code, the final determination of the board is to deny an application for financial assistance with necessary medical services, the applicant, or a third party making application on an applicant's behalf, may seek judicial review of the final determination of the board in the manner provided in section 31-1506, Idaho Code.

In turn, Idaho Code § 31-1506 provides that an applicant who is denied by the Board must seek judicial review of the Board's decision "within the same time and in the same manner as provided in chapter 52, title 67, Idaho Code, for judicial review of actions." Therefore,

> [j]udicial review of [the Board's] order is limited to the record. A reviewing court may not substitute its judgment for that of the [Board] on questions of fact, and will uphold [the Board's] finding of fact if supported by substantial and competent evidence. A reviewing court may reverse the [Board's] decision or remand for further proceedings only if substantial rights of the appellant have been prejudiced. I.C. § 67-5279(4). This Court reviews [the Board's] decision independently of the district court's appellate decision.

*Application of Ackerman*, 127 Idaho 495, 496-97, 903 P.2d 84, 85-86 (1995) (internal citations omitted).

> When the [Board] was required . . . to issue an order, the court shall affirm the [Board's action] unless the court finds that the [Board's] findings, inferences, conclusions, or decisions are: (a) in violation of constitutional or statutory

provisions; (b) in excess of the statutory authority of the [Board]; (c) made upon unlawful procedure; (d) not supported by substantial evidence on the record as a whole; or (e) arbitrary, capricious, or an abuse of discretion.

*Saint Alphonsus Reg'l Med. Ctr., Inc. v. Bd. of County Comm'rs of Ada Cnty.*, 146 Idaho 51, 53, 190 P.3d 870, 872 (2008) (quoting Idaho Code § 67-5279(3)). "Determining the meaning of a statute is a matter of law." *Id*. (citation omitted).

When this Court reviews a decision of a district court acting in its appellate capacity, it reviews the [Board] record to determine whether there is substantial and competent evidence to support the [Board]'s findings of fact and whether the [Board]'s conclusions of law follow from those findings. If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the [Board]'s decision, we affirm the district court's decision as a matter of procedure.

*Losser v. Bradstreet*, 145 Idaho 670, 672, 183 P.3d 758, 760 (2008) (quoting *Nicholls v. Blaser*, 102 Idaho 559, 561, 633 P.2d 1137, 1139 (1981)).

## III. ANALYSIS

St. Luke's urges that the district court erred in affirming the Board's determination that Freeman is not indigent because the Board erred in imputing income and income tax refunds to Freeman. Both parties ask for attorney fees. We address each issue in turn.

**A. The district court did not err in affirming the Board's determination that Freeman is not medically indigent as defined in Chapter 35, Title 31.**

St. Luke's contends that the Board erred when it determined Freeman is not indigent because it based that decision on the fact that Freeman is voluntarily unemployed outside of her home. St. Luke's argues that previous decisions by this Court do not compel the Board to impute income to Freeman in determining whether, under I.C. § 31-3502, she is medically indigent. St. Luke's further argues in its reply brief that I.C. § 35-3510A(6), regarding a county's ability to require a medically indigent person whose bills the county has paid to obtain employment, is the only provision in Chapter 35 that makes reference to a patient's ability to work. St. Luke's infers from this single reference that the Legislature did not intend that potential income from employment could be considered when determining whether a patient is indigent under I.C. § 31-3502. St. Luke's also contends that the Board erred in considering Freeman's potential income tax return in making its determination.

We first address St. Luke's argument that the statutory framework governing medical indigency indicates that the Legislature did not intend for the Board to consider Freeman's

ability to work in considering her application for county assistance.[1]  Next, we address St. Luke's argument regarding the case law interpreting the statutory definition of "medically indigent;" and finally we examine whether the Board erred in considering Freeman's potential income tax return as a resource.

In interpreting a statute, it is this Court's duty to ascertain and give effect to legislative intent by reading the entire act, including amendments. *George W. Watkins Family*, 118 Idaho at 539-40, 797 P.2d at 1387-88.  The definition of "medically indigent" at the time of Freeman's application was provided by I.C. § 31-3502(1).[2]  The statute provides that:

> "Medically indigent" means any person who is in need of necessary medical services and who, if an adult, together with his or her spouse, or whose parents or guardian if a minor, does not have income and other resources available to him from whatever source sufficient to pay for necessary medical services. Nothing in this definition shall prevent the board of county commissioners and administrator from requiring the applicant and obligated persons to reimburse the county and the catastrophic health care costs program, where appropriate, for all or a portion of their medical expenses, when investigation of their application pursuant to this chapter, determines their ability to do so.

Idaho Code § 31-3502(17)[3] states that:

> "Resources" means all property, whether tangible or intangible, real or personal, liquid or nonliquid, including, but not limited to, all forms of public assistance, crime victim's compensation, worker's compensation, veterans benefits, medicaid, medicare and any other property from any source for which an applicant and/or an obligated person may be eligible or in which he or she may have an interest.  Resources shall include the ability of an applicant and obligated persons to pay for necessary medical services over a period of up to five (5) years. For purposes of determining approval for medical indigency only, resources shall not include the value of the homestead on the applicant or obligated persons' residence, a burial plot, exemptions for personal property allowed in section 11-605(1) through (3), Idaho Code, and additional exemptions allowed by county resolution.

---

[1] St. Luke's raises this argument for the first time in its reply brief on appeal, and this Court will not normally consider arguments raised for the first time in the appellant's reply brief. *Suitts v. Nix*, 141 Idaho 706, 708, 117 P.3d 120, 122 (2005).  However, because the Court is also required to read an act in its entirety when interpreting a statute, *George W. Watkins Family v. Messenger*, 118 Idaho 537, 539-40, 797 P.2d 1385, 1387-88 (1990), we address St. Luke's argument with respect to I.C. § 31-3510A.  St. Luke's also raises an issue concerning the Board's use of the figure $1,433.01 for Robert Freeman's net income; however, because it raises this issue for the first time in its reply brief, according to the general rule, we decline to address it.

[2]  All statutory citations in this opinion will refer to those in effect at the time of Freeman's application.  Where applicable, the current statutory citation will be identified by way of footnote.  The definition of "medically indigent" is currently codified at I.C. § 31-3502(15) (2010).

[3]  This paragraph is currently codified at I.C. § 31-3502(23) (2010).

Although the latter definition includes "the ability of an applicant . . . to pay for necessary medical expenses," it does not explicitly refer to potential or imputed income, thereby failing to expressly answer the main question raised in this appeal: Is potential income a resource that the Board may consider in determining indigency? St. Luke's and the dissent contend that because I.C. § 31-3510A(6) is the only provision in the medical indigency statutory scheme that expressly mentions potential income, the Legislature intended the answer to the above question to be "no." The dissent states that "[u]ntil a person is found to be medically indigent and has received benefits, there can be no reimbursement and I.C. § 31-3510A(1) cannot be applied." From this statement, which we believe to be an accurate statement of law, the dissent concludes that "I.C. § 31-3510A(6) cannot be read in conjunction with I.C. § 31-3510A(1) . . . to expand the scope of what constitutes a 'resource' for purposes of determining eligibility for medical indigency benefits." We disagree.

Our starting point is the Legislature's express declaration found in I.C. § 31-3501[4]: "It is the policy of this state that each person, to the maximum extent possible, is responsible for his or her own medical care . . . ." Consistent with this policy, I.C. § 31-3510A, entitled "Reimbursement," requires anyone who receives financial assistance for medical expenses from a county to reimburse the county "for *such reasonable portion* of the financial assistance paid on behalf of the applicant as the board may determine that the applicant *is able to pay from resources* over a reasonable period of time." I.C. § 31-3510A(1) (emphasis added). Idaho Code § 31-3510A(6) further provides that in seeking reimbursement, "[t]he board may require the employment of such of the medically indigent as are capable and able to work and whose attending physician certifies they are capable of working." St. Luke's argues that because this provision is the only one that expressly mentions potential income, the Legislature must have intended that the Board consider potential income when determining how much a person is required to reimburse the County, but not when considering whether a person is indigent in the first place.

When I.C. §§ 31-3510A(1) and (6) are read together, it is clear that the Legislature intended for the potential income of an able-bodied person to be considered as a "resource" from which that person may be obligated to reimburse the county. We do not view the Legislature as having intended the word "resources" to have different meanings within Chapter 35, Title 31.

---

[4] This provision is now codified as I.C. § 31-3501(1) (2010).

Indeed, I.C. § 31-3502 declares that "[a]s used in this chapter, the terms defined in this section shall have the following meaning, unless the context clearly indicates another meaning . . . ." This declaration is consistent with long-standing rules of statutory interpretation. "'Other portions of the same act or section may be resorted to as an aid to determine the sense in which a word, phrase, or clause is used, and such phrase, word, or clause, repeatedly used in a statute, will be presumed to bear the same meaning throughout the statute, unless there is something to show that there is a different meaning intended, such as a difference in subject-matter which might raise a different presumption.'" *Kerley v. Wetherell*, 61 Idaho 31, 41, 96 P.2d 503, 508 (1939) (quoting *Sprouse v. Magee*, 46 Idaho 622, 631, 269 P. 993, 996 (1928)).

In view of the explicit mandate that the terms defined in I.C. § 31-3502 are to be consistently afforded the same meaning throughout the chapter, if the Board should consider potential income as a resource under I.C. § 31-3510A for purposes of reimbursement, it should also consider potential income as a resource under I.C. § 31-3502(1), regarding medical indigency. This conclusion is in keeping with the definition of "medically indigent" which considers both income and other resources.

The dissent, focusing heavily on Freeman's *present* inability to pay for the cost of her medical care and relying on our decision in *Univ. of Utah Med. Ctr. v. Twin Falls Cnty.*, 122 Idaho 1010, 842 P.2d 689 (1992), asserts that "the hardship of any waiting period for payment must fall on the counties, not hospitals." It is true that this Court stated in that case that "[t]he more reasonable interpretation is that 'available' in I.C. § 31-3502(1) denotes *currently* or *immediately* obtainable income or resources and a corresponding *present* ability to pay, rather than a future ability to pay, or a potential future ability to pay." *Id.* at 1015, 842 P.2d at 694 (emphasis original). However, in 1996, the Legislature rejected this Court's view of a "more reasonable interpretation," defining "resources" to "include the ability of an applicant and obligated persons to pay for necessary medical services over a period of up to three (3) years." 1996 Idaho Sess. Laws ch. 410, §3, p. 1360. Evidently satisfied with the hospitals' ability to wait for payment, in 2005 the Legislature extended the period to five years. 2005 Idaho Sess. Laws ch. 281, §1, p. 917. In view of these actions, we are unable to reach the dissent's conclusion regarding the allocation of hardship. Our conclusion that a patient's potential income may properly be considered as a "resource" is also consistent with previous decisions from this Court.

In 1984, when this Court decided *Carpenter v. Twin Falls County*, 107 Idaho 575, 691 P.2d 1190 (1984), I.C. § 31-3502(1) defined "medically indigent" as "any person who is in need of hospitalization and who, if an adult, together with his or her spouse, . . . does not have income and other resources available to him from whatever source which shall be sufficient to enable the person to pay for necessary medical services." *Carpenter*, 107 Idaho at 583, 691 P.2d at 1198. Idaho Code § 31-3502 did not yet contain an express definition of "resources." 1984 Idaho Sess. Laws ch. 99, §1, p. 227. Against this statutory backdrop, Carpenter applied for county assistance for medical bills incurred in connection with his wife's terminal illness. *Carpenter*, 107 Idaho at 577, 691 P.2d at 1192. He quit his job after making the application. *Id*. at 579, 691 P.2d at 1194. On appeal, it was claimed that he "clearly was medically indigent because at the time of the hearing before the [Board] he had virtually no income." *Id*. at 585, 691 P.2d at 1200. This Court ultimately held that "[e]ven if we assume that Carpenter was capable of earning the income he was receiving at the time his application was filed . . . the facts set forth above demonstrate that Mr. Carpenter" is indigent. *Id.* The Court also stated, however, that it was proper for the commission "to consider all the facts, including that Mr. Carpenter was a healthy individual who had voluntarily quit his job." *Id.*

This Court later decided *Application of Ackerman*, 127 Idaho 495, 903 P.2d 84 (1995). At that time, the act defined "medically indigent" just as it had in *Carpenter* and did not yet expressly define "resources." 127 Idaho at 497, 903 P.2d at 86; 1993 Idaho Sess. Laws ch. 112, § 1, p. 283. The appellant in *Ackerman* argued that he met the definition of "medically indigent" because he did not have a reserve of funds to pay off his medical bills all at once. 127 Idaho at 497, 903 P.2d at 86. The Court disagreed, stating that "Ackerman presently has the ability to pay off his medical expenses in a reasonable time . . . but for his lifestyle choices." *Id.* at 497-98, 903 P.2d at 86-87. The lifestyle choices the Court was referring to were Ackerman's discretionary expenditures, including satellite television service, cell phone service, and credit card debt. *Id.* at 498, 903 P.2d at 87.

In view of the statutory framework and these two decisions, we find no legal error in the Board's determination that it was proper to impute income to Freeman as a "resource." We do not criticize Freeman's choice not to work outside her home; we are simply unable to agree with St. Luke's contention that the taxpayers of Gooding County are required to provide financial assistance in support of that choice.

There is substantial evidence in the record that supports the Board's imputation of a minimum wage income to Freeman. Freeman testified that she is "able-bodied and able to work." She further testified that she has previously worked outside of the home, and that it was her intention to look for work in the future "if need be."

St. Luke's also asserts that the Board erred by imputing future tax refunds to Freeman when evaluating her resources. St. Luke's relies on the decision in *Univ. of Utah Hosp. and Med. Ctr. v. Twin Falls Cnty.*, 122 Idaho 1010, 842 P.2d 689 (1992), in support of its argument that the Board imputing a tax refund to Freeman was legal error. The issue in *Univ. of Utah Hosp. and Med. Ctr.* involved the question of whether a county could consider the possibility of future benefits from other governmental agencies as an "available resource" in making indigency determinations. 122 Idaho at 1014, 842 P.2d at 693. The Court held that:

> Viewing the medical indigency act as a whole, it is apparent that the underlying premise is to "keep the ball rolling," a premise that the system, though it might falter, cannot be allowed to come to a standstill, which would be the result of the statutory interpretation urged upon us by the County. It would be a denial of justice to make distant hospitals wait indefinitely for payment of just claims, perhaps until some point in the future when it can be authoritatively declared, beyond challenge, that all other potentially available resources have been exhausted.
> . . . .
> Due to the paramount importance of these lofty goals aimed at preserving the accessibility of medical treatment for indigents and the viability for hospitals of providing such treatment, the hardship of any waiting period while applications for other government benefits are processed must fall to the counties, not the hospitals.

122 Idaho at 1016, 842 P.2d at 695. The Legislature evidently disagreed with this analysis of the policies underlying the act, because in 1996, "resources" were defined for the first time and specifically included "all forms of public assistance, crime victim's compensation, worker's compensation, veterans benefits, medicaid, medicare . . . for which an applicant and/or an obligated person may be eligible." 1996 Idaho Sess. Laws ch. 410, §3, p. 1360. At the same time, the Legislature expressly provided that "resources" would include the ability to pay for the medical services within a three year period. *Id*. In light of this legislative declaration of policy, we cannot conclude that it was legal error for the Board to impute future tax refunds as a resource when determining if Freeman was medically indigent.

We find that there was substantial evidence before the Board to support the factual determination that $4,000 per year should be imputed for future tax refunds. If Freeman works,

taxes will be withheld and her income, combined with that of her spouse, will fall somewhere between that which they earned in 2005 and that which they earned in 2006 and their income tax refund will likewise be somewhere between what they received in 2005 and what they received in 2006. The Freemans had a combined income of $28,023 in 2005 and $23,067 in 2006. They received an income tax refund of $4,062 in 2005 and a refund of $5,447 in 2006. The Board imputed a future combined income of $26,188.32 and a future income tax refund of $4,000 to the Freemans. To support its argument that this imputation is clearly erroneous, St. Luke's points to Freeman's testimony that she did not "know with reasonable certainty what [her] tax refund is going to be next year." Freeman's uncertainty, however, does nothing to undermine the Board's finding, which is based upon substantial, competent evidence in the record.

For the foregoing reasons, we affirm the district court's decision affirming the Board's determination.

**B. Neither party is entitled to attorney fees on appeal.**

While St. Luke's has asked for attorney fees, it has not prevailed, and is therefore not entitled to an award. The Board requests attorney fees on appeal pursuant to I.C. § 12-117. An award is appropriate under this provision if this Court finds that St. Luke's pursued this appeal without a reasonable basis in fact or law. *Mercy Med. Ctr. v. Ada Cnty.*, *Bd. of County Comm'rs of Ada County*, 146 Idaho 226, 233, 192 P.3d 1050, 1057 (2008).

There are two factors which lead this Court to conclude that St. Luke's has not pursued this appeal without a reasonable basis in fact or law. First, the question whether potential income may be considered as a resource is a legal question of first impression before this Court. Second, the pre-litigation screening panel found Freeman to be medically indigent, suggesting that St. Luke's factual assertions may have had merit. We therefore decline to award the Board attorney fees.

### IV. CONCLUSION

We affirm the district court's decision affirming the Board's determination that Freeman is not medically indigent. No attorney fees on appeal. Costs to the County.

Justice Pro Tem TROUT **CONCURS**.

J. JONES, Justice, specially concurring.

I concur in the Court's analysis and with its conclusion that imputed income may be considered by a county board in determining the indigency status of a person applying for medical assistance. In my mind, the all-inclusive language used by the Legislature in defining who is "medically indigent" and what "resources" are to be considered in making the determination, indicates what many observers of legislative efforts in this arena know to be the case. That is, the Legislature has made a number of efforts in recent years to tighten up the medical indigency statutes to reduce the taxpayers' financial burden for indigent medical care. The legislative changes have attempted to make it more difficult to qualify and to place more of the financial burden upon those who apply for benefits. On the other hand, I do perceive an infirmity in the County Board's calculation of the amount of income to impute to Megan Freeman and, while that infirmity was not raised as an issue on appeal in this case, it is a matter that should be considered in any future case of this nature.

With regard to the question of whether imputed income is to be considered in the medical indigency calculation, one first turns to the definition of medically indigent. As the Court notes, in the version of Idaho Code section 31-3502 in effect at the time this case arose, the Legislature defined such a person as one who "does not have income and other resources available to him from whatever source" sufficient to pay for the medical care. Income, therefore, is obviously a resource. The Legislature did not speak of past income, future income, current income, imputed income, or any other specific type of income, but spoke of income in general, "from whatever source." In defining "resources," the Legislature set out a nonexhaustive list of assets―"tangible or intangible, real or personal, liquid or nonliquid, including, but not limited to"―and, after listing several specific items, included "any other property from any source." The Legislature went on to state that resources "shall include the ability of an applicant and obligated persons to pay for necessary medical expenses over a period of up to five (5) years." These definitions show the Legislature intended that in making the determination as to whether an applicant was qualified for assistance, he or she would have to place on the table all assets available to him or her, including any income obtainable within the ability of the applicant in the ensuing five years.

If one were not satisfied that the language, alone, would lead to the conclusion that imputed income must be counted, one can drawn an analogy to employment or personal injury cases in which a person is seeking to recover future income. When courts instruct juries on what

may be recovered, they do not (unless the defendant drops the ball and forgets to plead mitigation of damages) allow recovery of all income that the plaintiff might have expected to receive in the future but for the defendant's wrongful conduct. The courts expect plaintiffs to mitigate their damages—to do the best they can to obtain work and reduce the amount of lost earnings that must be replaced by the defendant. It is certainly not a stretch to believe that the Legislature intended medical indigency applicants who have the ability to work and to obtain employment to try to reduce the financial burden on taxpayers. To relieve applicants of any obligation to assist in paying their medical bills from future earnings would seem to be contrary to what the courts and the Legislature generally expect.

Another thing that the courts generally figure into the equation in making lost income calculations is the availability of jobs in the local market. If a person can't get a job, even if able to perform certain work, imputation of income may not be reasonable. In looking at the County Board's Amended Findings of Fact and Decision on Remand, the Board states that "Megan Freeman is capable of working in a full-time minimum wage job," but does not indicate whether or not such a job is available in the locality. Perhaps it was assumed at the time that she would have no difficulty in finding a job. However, with the current economic climate and scarcity of jobs, the chances of obtaining employment and income, imputed or otherwise, appears to be rather slim. If no job is available to the applicant, it hardly seems appropriate to impute any income.

While any imputed income might be speculative in nature, given the ebb and flow of the job market, this does not present a hindrance to courts or juries in making the calculation in lost income cases, which use the best evidence available. It is not clear that either party submitted evidence to the County Board regarding the availability or nonavailability of jobs in the area, but it would certainly be a relevant factor for parties to present and for a county board to consider. Neither party raised the issue in this appeal so the issue is not before us for decision. However, it would certainly be a factor that I would find to be important in any future case of this nature that might come before the Court.

BURDICK, J., dissenting.

For the reasons stated below, I dissent from the majority opinion. The facts as related by the majority are correct, as is the standard of review, and need not be reviewed here.

On appeal, St. Luke's correctly argues that the district court erred in affirming the Board's determination that Megan Freeman is not medically indigent because the Board improperly found that speculative future income constitutes a resource for the purpose of determining eligibility for medical indigency benefits.

In concluding that speculative future income does not constitute a resource, this analysis will first explore the scope of the term "resources," as it is defined by the plain language of chapter 35, title 31, Idaho Code, the Medical Indigency Act (the Act); next, the legislative intent for the Act; and finally, the case law cited by the district court and the majority to improperly find that speculative income constitutes a resource.

**A. The plain language of the Medical Indigency Act**

The plain language of the Act does not support the Board's finding that speculative future income is a resource for the purpose of determining an individual's status as medically indigent. As this Court wrote in *Doe v. Boy Scouts of America*, "statutory interpretation begins with the literal words of a statute, which are the best guide to determining legislative intent." 148 Idaho 427, __, 224 P.3d 494, 497 (2009). "The plain meaning of a statute will prevail unless clearly expressed legislative intent is contrary or unless the plain meaning leads to absurd results." *Action Collection Serv., Inc. v. Haught*, 146 Idaho 300, 303-304, 193 P.3d 460, 463-464 (Ct. App. Idaho 2008).

Idaho Code § 31-3502(1)[5] defines "medically indigent" as "any person who is in need of necessary medical services and who, if an adult, together with his or her spouse, or whose parents or guardian if a minor, does not have income and other resources available to him from whatever source sufficient to pay for necessary medical services." The Act was amended in 2005 to define "resources" under I.C. § 31-3502(17)[6] as:

> [A]ll property, whether tangible or intangible, real or personal, liquid or nonliquid, including, but not limited to, all forms of public assistance, crime victim's compensation, worker's compensation, veterans benefits, Medicaid, Medicare and any other property from any source for which an applicant and/or an obligated person may be eligible or in which he or she may have an interest. Resources shall include the ability of an applicant and obligated persons to pay for necessary medical services over a period of up to five (5) years. For purposes of determining approval for medical indigency only, resources shall not include the value of the homestead on the applicant or obligated persons' residence, a

---

[5] This section is currently codified at I.C. § 31-3502(15) (2010).
[6] This section is currently codified at I.C. § 31-3501(23) (2010).

- 12 -

burial plot, exemptions for personal property allowed in section 11-605(1) through (3), Idaho Code, and additional exemptions allowed by county resolution.

S.L. 2005, ch. 281, § 1. The plain language of I.C. § 31-3502(17) does not include speculative future income as a resource for the purpose of determining an individual's status as medically indigent. Many *presently* held forms of capital, such as real property; as well as *future* forms of capital that are definite, guaranteed, and clearly measurable - such as Medicare benefits - are enumerated as "resources" by I.C. § 31-3502(17). However, speculative future income is not similar to any of the enumerated future forms of capital because it is not guaranteed and is subject to uncontrollable variables that make it incapable of being definite or clearly measurable.

The majority concedes that I.C. § 31-3502(17)'s definition of "resources" does not include future income. However, it argues that when every word, clause, and sentence of the Act is given effect, as must always be the case, *George W. Watkins Family v. Messenger*, it becomes clear that future income should properly be considered a resource in determining eligibility for medical indigency benefits. 118 Idaho 537, 540, 797 P.2d 1385, 1388 (1990).

The majority found that a comprehensive reading of I.C. § 31-3510A, entitled "reimbursement," demonstrates that the legislature intended for potential income to be considered as a resource in determining an individual's status as medically indigent. To reach this conclusion the majority reads subsections (1) and (6) of the reimbursement provision together.

Subsection (1) of the reimbursement provision requires recipients of financial benefits to reimburse the county for a "reasonable portion of the financial assistance paid on behalf of the applicant as the board may determine that the applicant is able to pay from resources over a reasonable period of time." I.C. § 31-3510A(1).

Subsection (6) provides that "[t]he board may require the employment of such of the medically indigent as are capable and able to work and whose attending physician certifies they are capable of working." I.C. § 31-3510A(6).

The majority's use of the reimbursement provision to illustrate that speculative future income constitutes a resource for determining eligibility for medical indigency benefits is improper. The title of I.C. § 31-3510A, "Reimbursement," indicates that any power granted to the counties by the reimbursement provision is only applicable *after* the county has found that the individual is medically indigent and has also provided her with indigency benefits.

Although future income is a "resource" with respect to an individual's ability to reimburse the county for medical assistance under I.C. § 31-3510A(1), it is not a "resource" for the purposes of determining whether an individual qualifies for medical indigency benefits in the first place. Until a person is found to be medically indigent and has received benefits, there can be no reimbursement and I.C. § 31-3510A cannot be applied. Therefore, I.C. § 31-3510A(6) cannot be read in conjunction with I.C. § 31-3510A(1), as the majority suggests, to expand the scope of what constitutes a "resource" for purposes of determining eligibility for medical indigency benefits. Rather, for a form of capital to constitute a "resource" for the purpose of determining eligibility for medical indigency benefits, authority must be found in the language of I.C. § 31-3502(17), which, in this case, does not exist.

### B. The legislative purpose for the Medical Indigency Act

In addition to misapplying I.C. § 31-3510A, the majority's reading of the reimbursement provision does not comport with the declaration of the Act as a whole. The legislative intent of the Act, articulated in I.C. § 31-3501, provides that, "in order to safeguard the public health, safety and welfare, and to provide suitable facilities and provisions for the care and hospitalization of indigent persons in this state, and to provide for the payment thereof, the respective counties of this state shall have the duties and powers as hereinafter provided." *See Univ. of Utah Hosp. and Med. Ctr. v. Twin Falls Cnty.*, 122 Idaho 1010, 1016, 842 P.2d 689, 695 (1992). However, the legislature also provided that "each person, to the maximum extent possible, is responsible for his or her own medical care." I.C. § 31-3501.

This Court, in *Twin Falls Cnty.*, held that it is not proper "to make hospitals wait indefinitely for payment of just claims" and that "financial solvency and stability" of medical facilities, achieved though prompt payment, is necessary to maintain suitable facilities. 122 Idaho at 1016, 842 P.2d at 695. Thus, the hardship of any waiting period for payment must fall on the counties, not hospitals. *Id*. Accordingly, in *Twin Falls Cnty*., this Court held that pending applications for speculative federal supplemental social security benefits were not a resource for the purpose of determining eligibility for medical indigency benefits. This Court reasoned that because the speculative social security benefits were not "readily accessible," allowing them to constitute a resource would place the hardship of delayed payment on hospitals, which in turn would negatively effect the hospitals' ability to provide suitable care both to medically indigent patients and the general public. 122 Idaho at 1015, 842 P.2d at 694.

It follows that allowing speculative future income to serve as a resource would result in the same hardship on hospitals seeking payment that this Court rejected in *Twin Falls Cnty*. The fact that the Board in this case arbitrarily found that, given the correct circumstance, Freeman would be able to pay her medical costs in no way means that such circumstantial speculation will come to fruition. Thus, the Board's finding and the majority's affirmance places the risk of non-payment directly on the hospital rather than on the county, contrary to the legislative purpose and the established precedent of this Court.

Furthermore, the majority decision limits access to county funds and restricts the medically indigent from access to aid for mandatory emergency care in contravention of the Act's purpose of safeguarding the public health, safety and welfare. The medically indigent should not be restricted from access to financial benefits based on arbitrary conclusions of what constitutes a resource. Rather, when appropriate, the medically indigent should be granted benefits and the county should then use its legislatively provided authority to force reimbursement through employment. This will result in hospitals receiving prompt and just compensation while medically indigent patients are still forced to repay the maximum they are able to, by reimbursing the county for the care they received.

**C. The district court's erroneous case analysis**

In addition to the misapplication of the reimbursement provision, the majority relies heavily on tenuous case law analogies to find that speculative future income constitutes a resource for determining whether a person is eligible for medical indigency benefits. The first case that the majority relies on is *Carpenter v. Twin Falls Cnty.*, 107 Idaho 575, 691 P.2d 1190 (1984). In *Carpenter*, the applicant seeking to be found medically indigent had voluntarily quit his job after making his application to the Board. *Id.* at 585, 691 P.2d at 1200. This Court found that the applicant was indigent regardless of his employment status. *Id.* The *Carpenter* Court went on to find that the Board was "free to consider all the facts, including that Mr. Carpenter was a healthy individual who had voluntarily quit his job." *Id.*

This court's logic in *Carpenter*, allowing a Board to consider an applicant's earning potential, is not applicable to this case for two reasons. First, and most importantly, when *Carpenter* was decided I.C. § 31-3502 did not contain any definition of "resources." S.L. 1984, ch. 99, § 1. Thus, this Court was not bound by the words of the legislature in arriving at its conclusions of law. Today, however, this is not the case. Idaho Code § 31-3502(17) clearly and

unambiguously enumerates what sources of capital constitute a "resource" for the purpose of initially determining medical indigency.

Second, this Court found that Carpenter was indigent regardless of his employment status, thus, the language from *Carpenter* that the district court relies on is dicta because it was not necessary or essential to determine the outcome of the case. *See Smith v. Angell*, 122 Idaho 25, 35, 830 P.2d 1163, 1173 (1992). Such dicta "cannot be relied upon as binding precedent." *Shrives v. Talbot*, 91 Idaho 338, 346, 421 P.2d 133, 141 (1966).

The majority also relies heavily on this Court's opinion in *Application of Ackerman*, 127 Idaho 495, 903 P.2d 84 (1995). In *Ackerman,* the applicant claimed that his monthly expenses, including payments for satellite T.V., a cellular phone, and a motorcycle, rendered him medically indigent. *Id.* at 496, 903 P.2d at 85. This Court disagreed and stated that the applicant's lifestyle choices could not be used as an excuse for indigency and that "Ackerman presently had the ability to pay off his medical expenses." *Id*. at 497-98, 903 P.2d at 86-87.

In this case, the majority found that Freeman's decision to care for her two children, ages five and one respectively, after another job had fallen through, was a lifestyle choice that precluded her from receiving benefits. Strangely, the majority found that the applicant's decision in *Ackerman* to frivolously spend on motorcycles, cell phones, and satellite television was sufficiently analogous to a mother's decision to remain home and care for her children.

Regardless of whether this Court finds Freeman's decision to care for her children is a "lifestyle choice," the financial situation of the applicant in *Ackerman* is quite different from Freeman's financial situation in this case. To reiterate, in *Ackerman* this Court found that, but for the applicant's lifestyle choices he "presently h[ad] the ability to pay off his medical expenses." *Id*.

However, Freeman does not have the *present* ability to pay off her bills by simply eliminating luxury items from her monthly costs. Instead, her ability to pay was premised on the arbitrary assumption that she could promptly obtain employment, no more than 2.5 miles from home, during the hours that her husband did not work, which were the primary hours of employment, 8:00 AM to 5:00 PM.

Unlike the applicant in *Ackerman,* Freeman was not presently capable of paying her medical cost when she applied for benefits. Thus, this Court's conclusion in *Ackerman* is not applicable to the present case.

The Board's finding that future income constitutes a resource for the purpose of determining eligibility of medical indigency benefits was arbitrary and capricious. Likewise, the majority's affirmance of the Board's decision ignores the plain language of the Act, does not comport with the legislative intent for the Act, and runs counter to prior case law precedent established by this Court.

W. JONES, J., concurring in dissent:

I concur in the dissent of Justice Burdick, but write separately to add or perhaps clarify what I believe is a fundamental part of the analysis.

To me, the bottom line in this case is simply whether the risk of receiving payment for some or all of the medical costs and the hardship of the waiting time of up to five years to receive payment falls on the hospital rendering care or the county. It seems clear to me that Justice Burdick correctly holds that the definition of "resources" for determining eligibility for assistance does not consider the ability to work as a resource because, obviously, the legislature was aware of that issue since it specifically provided for the ability of the applicant to work in the reimbursement portion of the statute. The fact that the only mention of the ability to work is contained in the reimbursement section is evidence to me that the legislature intended that if an applicant for assistance is presently medically indigent without regard to such person's ability to work, then the county must pay for the medical care and bear the responsibility of obtaining reimbursement. On the other hand, if the applicant has the present ability from the resources defined in I.C. § 31-3502(17) to pay the medical expenses within a five year period, then such person is not medically indigent and the hospital must wait for up to five years to receive payment of the expenses. The legislature has, it seems, determined that it is fair and reasonable for a hospital to wait up to five years to receive payment of medical expenses, but if an applicant's current situation based upon the resources defined in section I.C. § 31-3502(17) are not sufficient to pay such expenses within five years, then the county must pay and bear the responsibility of seeking reimbursement under I.C. § 31-3510(A)(8). Such a policy decision is for the legislature to make and apparently the legislature feels that to make a hospital wait indefinitely to be paid jeopardizes the willingness of hospitals to render indigent care. Under the circumstances of the present case, therefore, I believe the dissent is correct in finding that Mrs. Freeman was medically indigent in this case.